Oscar Stilley Attorney at Law Central Mall Plaza Suite 516 5111 Rogers Avenue Fort Smith, AR 72903-2041
Dear Mr. Stilley:
This is in response to your request for certification, pursuant to A.C.A. § 7-9-107 (Repl. 1993), of the following popular name and ballot title for a proposed amendment to the Arkansas Constitution:
 POPULAR NAME AN AMENDMENT TO LIMIT THE SALARIES AND BENEFITS OF PUBLIC EMPLOYEES, TO PROVIDE PROCEDURES FOR THE RECOVERY OF ILLEGAL COMPENSATION OR EXPENDITURES, AND FOR OTHER PURPOSES
 BALLOT TITLE AN AMENDMENT TO THE ARKANSAS CONSTITUTION LIMITING THE SALARIES OF PUBLIC SERVANTS TO $100,000 PER YEAR, AND PROVIDING FOR FRINGE BENEFITS FOR ALL PUBLIC SERVANTS IN THE AMOUNT OF 25% OF DIRECT COMPENSATION; PROVIDING THAT THE TERM "PUBLIC SERVANTS" SHALL FOR PURPOSES OF THIS AMENDMENT MEAN ALL OFFICERS OR EMPLOYEES OF THE STATE OF ARKANSAS, ITS INSTITUTIONS, AGENCIES, OR SUBDIVISIONS, PAID IN WHOLE OR IN PART FROM STATE OR LOCAL TAXES, FEES, FINES, PENALTIES, TUITION, OR RENTS OF STATE OR LOCAL PROPERTY, BUT NOT PERSONS WHOSE COMPENSATION IS FIXED BY CONSTITUTIONAL AMENDMENT AS A PERCENTAGE OF THE NET SAVINGS TO THE PUBLIC TREASURY, AND/OR A PERCENTAGE OF THE NET PROFITS OF A STATE AGENCY; PROVIDING THAT PUBLIC SERVANTS WHO WORK LESS THAN 50 WEEKS OF ACTUAL WORK PER YEAR SHALL RECEIVE SALARY NOT TO EXCEED $2,000 PER FULL WEEK ACTUALLY WORKED; PROVIDING THAT THE SALARY LIMITATIONS MAY BE INCREASED OR DECREASED BY POPULAR VOTE AT REGULARLY SCHEDULED STATEWIDE ELECTIONS, BY LEGISLATIVE REFERENDUM OR BY INITIATIVE; DEFINING "FRINGE BENEFITS" AS ALL PUBLIC FUNDS PAID FOR RETIREMENT PLANS OR ACCOUNTS (WHETHER OR NOT MANDATED BY LAW), PAY FOR HOLIDAYS, VACATIONS, OR SICK LEAVE; AND ALL OTHER BENEFITS PROVIDED TO OR FOR THE BENEFIT OF THE EMPLOYEE, CALCULATED AT THE REASONABLE COST OF PROVIDING THE BENEFIT, BUT EXCLUDING UNPAID LEAVE OR BENEFITS PROVIDED PRIMARILY FOR THE BENEFIT OF THE EMPLOYER; REQUIRING THAT ALL RETIREMENT ACCOUNTS BE MAINTAINED ON AN ACTUARIALLY SOUND BASIS IN SEGREGATED ACCOUNTS MAINTAINED FOR THAT PURPOSE; PROTECTING THE RIGHTS OF PUBLIC SERVANTS HOLDING VESTED RIGHTS IN RETIREMENT PLANS; PROVIDING THAT ALL PUBLIC SERVANTS SHALL BE DEEMED TO HAVE RECEIVED, AS A FRINGE BENEFIT, ALL SUMS REQUIRED TO MAINTAIN THE ACTUARIAL SOUNDNESS OF ANY RETIREMENT ACCOUNT, FOR EACH MONTH OF EMPLOYMENT AFTER JULY 1, 2001; PROVIDING THAT VESTED BUT LESS THAN FULLY FUNDED RETIREMENT ACCOUNTS FOR PUBLIC SERVANTS BE FULLY FUNDED AS SOON AS POSSIBLE; PROVIDING THAT ALL RETIREMENT PLANS FOR STATE OR LOCAL EMPLOYEES HIRED AFTER JULY 1, 2001, SHALL BE MAINTAINED IN APPROVED PRIVATELY MANAGED RETIREMENT ACCOUNT(S) AS MAY BE CHOSEN BY THE EMPLOYEE; PROVIDING THAT ANY PERSON PAYING ANY PART OF ANY LOCAL TAX, WHETHER DIRECTLY OR INDIRECTLY, MAY MAINTAIN SUIT TO RECOVER BACK ANY ILLEGAL EXPENDITURES FOR WHICH THE TAX IS USED; PROVIDING THAT THE STATUTE OF LIMITATIONS ON ALL SUCH ILLEGAL EXACTIONS SHALL BE FIVE YEARS; DEFINING, FOR PURPOSES OF THIS AMENDMENT, THE TERM" FUNDS" OR "EXPENDITURES" TO INCLUDE MONEY, GOODS, SERVICES, OR OTHER VALUABLE CONSIDERATION OBTAINED AT THE EXPENSE OF THE TREASURY OF THE AFFECTED PUBLIC ENTITY, WITH OR WITHOUT OFFICIAL APPROVAL, AND EXPRESSLY INCLUDING THEFT AS CONSTITUTING AN ILLEGAL EXACTION; PROVIDING FOR JOINT AND SEVERAL LIABILITY AGAINST ALL PERSONS OR ENTITIES WHO RECEIVED UNLAWFUL FINANCIAL OR PERSONAL BENEFIT, WHERE TWO OR MORE PERSONS ACT TOGETHER TO CAUSE AN ILLEGAL EXPENDITURE; PROVIDING THAT IN ALL CASES AGAINST ILLEGAL EXPENDITURES OF PUBLIC FUNDS, THE ATTORNEY REPRESENTING THE TAXPAYERS AND CITIZENS SHALL BE ENTITLED TO A REASONABLE ATTORNEY'S FEE, NOT LESS THAN 25% OF ANY COMMON FUND RECOVERED OR PRESERVED FOR THE TAXPAYERS, AND FURTHERMORE SUFFICIENT TO ENCOURAGE REPUTABLE ATTORNEYS TO TAKE SUCH CASES; PROVIDING THAT THE NAMED PLAINTIFF OR PLAINTIFFS WHO BROUGHT SUIT SHALL BE ENTITLED TO 5% OF ANY COMMON FUND RECOVERED; PROVIDING THAT THE RULES HEREIN CONCERNING LAWSUITS AGAINST ILLEGAL EXPENDITURES SHALL BE EFFECTIVE IMMEDIATELY AND CONTROL ANY ACTION BROUGHT TO JUDGMENT AFTER THE PASSAGE OF THIS AMENDMENT; PROVIDING THAT ANY OFFICER OR EMPLOYEE OF THE STATE OR ANY OF ITS AGENCIES, SCHOOL DISTRICTS, OR SUBDIVISIONS, MAKING UNLAWFUL PROFIT OUT OF PUBLIC MONEYS, OR USING THE SAME FOR ANY PURPOSE NOT AUTHORIZED BY LAW, SHALL BE PUNISHED AS MAY BE PROVIDED BY LAW, BUT THAT PART OF SUCH PUNISHMENT SHALL BE DISQUALIFICATION FROM THE HOLDING OF ANY PUBLICLY FUNDED EMPLOYMENT OR OFFICE WITHIN THIS STATE FOR A PERIOD OF FIVE YEARS; PROVIDING FOR LIBERAL CONSTRUCTION IN FAVOR OF THE TAXPAYER, SEVERABILITY, AND GENERAL REPEALER OF CONFLICTING PROVISIONS; PROVIDING THAT THE AMENDMENT IS SELF EXECUTING AND SHALL TAKE EFFECT JULY 1, 2001, EXCEPT AS OTHERWISE PROVIDED; AND FOR OTHER PURPOSES.
The Attorney General is required, pursuant to A.C.A. § 7-9-107, to approve and certify the popular name and ballot title of all proposed initiative and referendum acts or amendments before the petitions are circulated for signature. The law provides that the Attorney General may substitute and certify a more suitable and correct popular name and ballot title, if he can do so, or if the proposed popular name and ballot title are sufficiently misleading, may reject the entire petition.
A.C.A. § 7-9-107 neither requires nor authorizes this office to make legal determinations concerning the merits of the act or amendment, or concerning the likelihood that it will accomplish its stated objective. Consequently, this review has been limited to a determination, pursuant to the guidelines that have been set forth by the Arkansas Supreme Court, discussed below, of whether the proposed popular name and ballot title accurately and impartially summarize the provisions of your proposed amendment.
The purpose of my review and certification is to ensure that the popular name and ballot title honestly, intelligibly, and fairly set forth the purpose of the proposed amendment. See Arkansas Women's Political Caucusv. Riviere, 282 Ark. 463, 466, 677 S.W.2d 846 (1984).
The popular name is primarily a useful legislative device. Pafford v.Hall, 217 Ark. 734, 233 S.W.2d 72 (1950). It need not contain detailed information or include exceptions that might be required of a ballot title, but it must not be misleading or give partisan coloring to the merit of the proposal. Chaney v. Bryant, 259 Ark. 294, 532 S.W.2d 741
(1976); Moore v. Hall, 229 Ark. 411, 316 S.W.2d 207 (1958). The popular name is to be considered together with the ballot title in determining the ballot title's sufficiency. Id.
The ballot title must include an impartial summary of the proposed amendment that will give the voter a fair understanding of the issues presented. Hoban v. Hall, 229 Ark. 416, 417, 316 S.W.2d 185 (1958); Beckerv. Riviere, 270 Ark. 219, 223, 226, 604 S.W.2d 555 (1980). According to the court, if information omitted from the ballot title is an "essential fact which would give the voter serious ground for reflection, it must be disclosed." Bailey v. McCuen, 318 Ark. 277, 285, 884 S.W.2d 938 (1994), citing Finn v. McCuen, 303 Ark. 418, 798 S.W.2d 34 (1990); Gaines v.McCuen, 296 Ark. 513, 758 S.W.2d 403 (1988); Hoban v. Hall, supra; andWalton v. McDonald, 192 Ark. 1155, 97 S.W.2d 81 (1936). At the same time, however, a ballot title must be brief and concise (see A.C.A. §7-9-107(b)); otherwise voters could run afoul of A.C.A. § 7-5-522's five minute limit in voting booths when other voters are waiting in line.Bailey v. McCuen, supra. The ballot title is not required to be perfect, nor is it reasonable to expect the title to cover or anticipate every possible legal argument the proposed measure might evoke. Plugge v.McCuen, 310 Ark. 654, 841 S.W.2d 139 (1992). The title, however, must be free from any misleading tendency, whether by amplification, omission, or fallacy; it must not be tinged with partisan coloring. Id. A ballot title must convey an intelligible idea of the scope and significance of a proposed change in the law. Christian Civic Action Committee v. McCuen,318 Ark. 241, 884 S.W.2d 605 (1994). It has been stated that the ballot title must be: 1) intelligible, 2) honest, and 3) impartial. Becker v.McCuen, 303 Ark. 482, 798 S.W.2d 71 (1990), citing Leigh v. Hall,232 Ark. 558, 339 S.W.2d 104 (1960).
Having analyzed your proposed amendment, as well as your proposed popular name and ballot title under the above precepts, it is my conclusion that I must reject both your proposed popular name and ballot title due to several unresolved ambiguities in the text of your proposed measure. There are a number of additions or changes to your popular name and ballot title which in my view are necessary in order to more fully and correctly summarize your proposal. I cannot however, at this time, fairly or completely summarize the effect of your proposed measure to the electorate in a popular name or ballot title without the resolution of these ambiguities. I am therefore unable to substitute and certify a more suitable and correct ballot title under A.C.A. § 7-9-107(b).
The following ambiguities must be clarified in both your measure and ballot title:
 1. An ambiguity arises under Section 2 of your proposed amendment from the language "[n]othing herein shall be construed to limit the payment of additional salary or benefits to public employees, out of contributions from the public designated for the purpose of salary enhancement, subject to ethical restraints," and "[n]othing herein shall be construed to prohibit public servants from earning extra money in private sector employment, outside the normal working hours of said public servant." Do these two sentences affirmatively authorize the conduct described, or do the General Assembly, state or local entities retain the authority to prohibit both actions?
 2. An ambiguity arises, in my view, from the $100,000 cap on salaries, on the one hand, and the authorization for public servants to receive twenty-five percent of direct salary as "fringe benefits," on the other. Employees may receive "unused" fringe benefit funds as cash at the end of the year. Does the $100,000 salary cap include the amount of fringe benefits, or is the cap inapplicable to any cash or funds received as fringe benefits? In other words, is the total cap on compensation (salary and fringe benefits), $100,000 or $125,000?
 3. An ambiguity exists, in my view, from the language of the fourth sentence of Section 5 of your proposed amendment. That section involves public servant retirement accounts, and the fourth sentence states that: "For purposes of calculating fringe benefits, each employee holding such rights shall be deemed to have received fringe benefits in the amount required to maintain the actuarial soundness of the account, for each month of employment after July 1, 2001." I cannot determine the effect of this sentence. This sentence must therefore be clarified and its impact reflected in the ballot title for your measure.
 4. A final ambiguity involves the use of the words "public servants" in some places in your proposed amendment, and the use of the word "employees" in others. These two terms are not interchangeable, but appear to be used in that fashion in your proposed amendment." Public servants," under your proposed amendment, includes both "officers" and "employees." Section 1. An ambiguity therefore arises in several places in your measure as to whether the use of the word "employees" includes officers. The extent to which the various provisions apply to "employees" as opposed to "officers," must be reflected in a ballot title for your measure.
My office, in the certification of ballot titles and popular names, does not concern itself with the merits, philosophy, or ideology of proposed measures. I have no constitutional role in the shaping or drafting of such measures. My statutory mandate is embodied only in A.C.A. § 7-9-107
and my duty is to the electorate. I am not your counsel in this matter and cannot advise you as to the substance of your proposal.
At the same time, however, the Arkansas Supreme Court, through its decisions, has placed a practical duty on the Attorney General, in exercising his statutory duty, to include language in a ballot title about the effects of a proposed measure on current law. See, e.g., Finnv. McCuen, 303 Ark. 418, 793 S.W.2d 34 (1990). Where the effects of a proposed measure on current law are unclear or ambiguous, it is impossible for me to perform my statutory duty to the satisfaction of the Arkansas Supreme Court without clarification of the ambiguities.
My statutory duty, under these circumstances, is to reject your proposed ballot title, stating my reasons therefor, and to instruct you to "redesign" the proposed measure and ballot title. See A.C.A. §7-9-107(c). You may, after clarification of the issue discussed above, resubmit your proposed amendment, along with a proposed popular name and ballot title, at your convenience. I anticipate, as noted above, that some changes or additions to your submitted ballot title may be necessary. I will be pleased to perform my statutory duties in this regard in a timely manner after resubmission.
Sincerely,
MARK PRYOR Attorney General
Enclosure